UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Everett D. Williams

    v.                              Civil No. 23-cv-509-LM-AJ

Warden, FCI Berlin

### REPORT AND RECOMMENDATION

Petitioner, Everett D. Williams, a convicted and sentenced non-U.S. citizen, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, seeking to apply the time credits he has earned under the First Step Act ("FSA") to his sentence and to be placed in "prerelease custody" (a halfway house or home confinement). Before the court is Williams's motion for a preliminary injunction (Doc. No. 4) to enjoin the Federal Bureau of Prisons ("BOP") and U.S. Immigration and Customs Enforcement ("ICE") from transferring him to FCI Allenwood Low; placing him in removal proceedings; and potentially making him the subject of a final order of removal, which would likely affect his eligibility for the application of FSA time credits. The Warden objects to the motion for a preliminary injunction (Doc. No. 7).

### Background

The court derives the following facts from the record and matters susceptible of judicial notice. Williams is currently

serving a 324-month term of imprisonment with a five-year term of supervision for a drug trafficking conspiracy.  See United States v. Williams, No. 04-20065-cr-Seitz/013 (S.D. Fla. Jun. 26, 2008) (ECF No. 475).  Williams's sentence includes a special condition of supervision, stating that upon "the completion of [Williams's] term of imprisonment," Williams shall be surrendered to the custody of ICE for "removal proceedings consistent with the Immigration and Nationality Act."  Id.

   Williams has an ICE detainer.  He filed this petition while he was at FCI Berlin, a medium-security prison with a minimum security adjacent camp.  Anticipating he might be placed in removal proceedings if he were transferred, Williams filed the instant motion for a preliminary injunction.  As he expected, the BOP transferred Williams to FCI Allenwood Low in Pennsylvania shortly thereafter, where he could be placed in removal proceedings through the interagency "Institutional Hearing Program" (IHP, for short).

   The IHP is a program that operates at some federal prisons, which provides removal proceedings to sentenced non-U.S. citizens, prior to their release from BOP custody.  See U.S. Dep't of Just., Exec. Office for Immig. Rev., Fact Sheet: Institutional Hearing Program (Jan. 2018)); see also Lajqi v. Spaulding, No. 18-40212-DHH, 2019 WL 1756652, at *2 & n.1, 2019

U.S. Dist. LEXIS 68853, at *4 & n.1 (D. Mass. Feb. 6, 2019), R&R adopted, 2019 WL 1758089, 2019 U.S. Dist. LEXIS 69010 (D. Mass. Apr. 5, 2019). The IHP implements statutes directing the Attorney General to place non-U.S. citizen federal offenders in removal proceedings as soon as practicable after they are sentenced, see, e.g., 8 U.S.C. § 1228(a); 18 U.S.C. § 3624(d)(4)(E)(ii). The IHP allows removal proceedings to proceed while the person remains in BOP custody, so that ICE may effect a removal upon the completion of that person's sentence. See Lahigi v. Benov, No. 1:10-cv-02211-AWI-SKO-HC, 2013 WL 552008, at *1 n.1, 2013 U.S. Dist. LEXIS 19604, at *2 n.1 (E.D. Cal. Feb. 12, 2013).

The record here is silent as to whether Williams is presently in IHP proceedings, although both Williams and the respondent filed pleadings suggesting that they anticipated such proceedings would be initiated after his transfer. There is also no evidence in the record here suggesting that Williams has become the subject of a final order of removal.

## Preliminary Injunction Standard

A petitioner seeking preliminary injunctive relief must establish that "'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his

3

favor, and that an injunction is in the public interest.'" Glossip v. Gross, 576 U.S. 863, 876 (2015) (citation omitted). "If the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 794 F.3d 168, 173 (1st Cir. 2016) (citations, quotation marks, and brackets omitted). "To demonstrate likelihood of success on the merits, [movants] must show 'more than mere possibility' of success – rather, they must establish a 'strong likelihood' that they will ultimately prevail." Sindicato Puertorriqueño de Trabajadores, SEIU Local 1996 v. Fortuño, 699 F.3d 1, 10 (1st Cir. 2012) (per curiam) (citations omitted).

**Discussion**

I.  First Step Act

The petitioner asserts that the court must enjoin his transfer to FCI Allenwood Low and placement in the IHP because such placement conflicts with the FSA's sentence credit provisions. Prisoners with ICE detainers like Williams, seeking to earn FSA time credits in IHP removal proceedings, remain eligible to earn and have their FSA time credits applied to their sentences so long as they are not the subject of final orders of removal. See 18 U.S.C. § 3632(d)(4)(E)(i). But there

4

is a separate provision of the FSA that also applies in Williams's circumstances, which provides, in pertinent part, as follows:

> The Attorney General, in consultation with the Secretary of Homeland Security, shall ensure that any [removable] alien described in [8 U.S.C. §§ 1182, 1227] who seeks to earn time credits are [sic] subject to proceedings described in [8 U.S.C. § 1228(a)] at a date as early as practicable during the prisoner's incarceration.

18 U.S.C. § 3632(d)(4)(E)(ii).

The FSA thus directs the Attorney General to take steps to place some prisoners with ICE detainers, as appropriate, in removal proceedings while they remain in BOP custody. Williams's placement in removal proceedings is entirely consistent with that part of the FSA. And so, Williams is mistaken about the conflict between his transfer, IHP placement, and his rights under the FSA. Accordingly, the petitioner has not demonstrated any substantial likelihood of success on the merits of his FSA claim, in support of his motion for a preliminary injunction.

II. <u>Separation of Powers and Williams's Sentence</u>

Williams claims here that the terms of his sentence in his criminal case require the government to wait until he is released from BOP custody before initiating any removal

proceedings. And, he argues, the Separation of Powers does not allow the BOP to place him in IHP removal proceedings.

The petitioner's claim is premised on a special condition of his supervision, which states that Williams shall be surrendered to the custody of ICE for removal proceedings upon his release from BOP custody. See Jt., United States v. Williams, No. 04-20065-cr-Seitz/013 (S.D. Fla. Jun. 26, 2008) (ECF No. 475). That part of Williams's sentence specifies what will happen <u>after</u> his release from BOP custody, at the outset of his term of supervised release. Cf. United States v. Zamudio, 718 F.3d 989, 990 (7th Cir. 2013) ("A district judge may order, as a condition of supervised release, that a defendant be turned over to immigration officials for removal proceedings."). The sentence does not express anything about where the BOP may place Williams while he remains in BOP custody during the imprisonment term of his sentence. Cf. Tapia v. United States, 564 U.S. 319, 331 (2011) (BOP has "plenary control, subject to statutory constraints," over prisoner's place of imprisonment (citing 18 U.S.C. § 3621(b)). Accordingly, Williams has not demonstrated any likelihood of success on the merits of his separation of powers argument and his claim regarding the terms of his sentence, upon which he bases his preliminary injunction motion.

6

III. Ex Post Facto Claim

Williams asserts that his transfer to FCI Allenwood Low and placement in removal proceedings violates the Ex Post Facto Clause. A law "violates the Ex Post Facto Clause if it 'changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.'" United States v. Amirault, 224 F.3d 9, 14 (1st Cir. 2000) (citation omitted). "To fall within the ex post facto prohibition, a law must be retrospective - that is, 'it must apply to events occurring before its enactment' - and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997) (citations omitted).

At all relevant times, the BOP had the authority to designate FCI Allenwood Low as Williams's place of imprisonment. Williams has not shown that his transfer to that facility worked any retrospective change in his punishment. He has failed to show any likelihood of success on the merits of his ex post facto claim.

In analogous circumstances, courts have found no ex post facto violation in the BOP's recalculation of a non-U.S. citizen's sentence to exclude FSA earned time credits, after that person became the subject of a final order of removal. See, e.g., Cazarez v. Warden, FCI Ft. Dix, No. CV 23-4457 (KMW),

2023 WL 5623035, at \*2, 2023 U.S. Dist. LEXIS 154641, at \*6 (D.N.J. Aug. 31, 2023) (no ex post facto violation in BOP's refusal to apply FSA earned time credits after petitioner's final order of removal was reinstated). In Cazarez, the court observed as follows:

> Petitioner was not so much deprived of credits he already earned, as he was simply rendered ineligible to apply them to his sentence by his reinstated order of removal. . . . In any event, the same statute which granted him the ability to earn the credits is the same enactment which denies him the ability to apply them to his release, and Petitioner's entitlement to earn credits [under the FSA] was thus from the beginning subject to the proviso that he would be unable to apply those credits if he were ever the subject of an order of removal.

Id. (citations omitted).

Williams's ex post facto claim regarding his placement in IHP proceedings at FCI Allenwood Low is similarly meritless. The transfer effected no change whatsoever in Williams's sentence. Wherever he serves his term of imprisonment and however soon his removal proceedings begin, he remains potentially eligible for the application of FSA time credits, unless he becomes the subject of a final order of removal or otherwise fails to satisfy the preconditions of such eligibility. Accordingly, his motion for a preliminary injunction is not properly granted on his ex post facto claim.

IV. Due Process

The petitioner argues that his transfer and placement in IHP proceedings is fundamentally unfair and violates his right to due process. To establish a violation of the Due Process Clause, a petitioner must show that he was deprived of a protected interest in life, liberty or property and that "'the procedures attendant upon that deprivation were constitutionally'" insufficient. Gonzalez-Fuentes v. Molina, 607 F.3d 864, 886 (1st Cir. 2010) (citation omitted).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty.'" Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted). The record does not suggest any basis for finding that Williams's transfer to FCI Allenwood Low from FCI Berlin implicated any protected liberty interest or effected any atypical or significant hardship relative to the ordinary incidents of federal prison life. Compare id. at 222-24 (citing Sandin v. Conner, 515 U.S. 472, 484 (1995), in concluding that transfer exposing prisoner to supermax restrictive conditions of confinement imposed "'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'" and triggered need for due process protections).

To establish that an executive action violates substantive due process, the petitioner must allege facts showing that the

9

government's conduct "objectively 'shocks the conscience.'" S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc., 775 F.3d 82, 91 (1st Cir. 2014) (citation omitted). More than "humdrum" legal error must be shown. Id.

Williams's placement in removal proceedings is entirely consistent with 18 U.S.C. § 3624(d)(4)(E)(ii). Placing a prisoner like Williams in removal proceedings before he leaves federal prison could effectively reduce the time he might otherwise spend in ICE detention after his release from BOP custody. There is no legal error or fundamental unfairness implicated in Williams's circumstances. Accordingly, Williams has not shown any likelihood of prevailing on the merits of his due process claims underlying his preliminary injunction motion.

V.   Equal Protection

Petitioner claims that his transfer and placement in the IHP subjected him to a class-of-one equal protection violation. To establish a "class of one" claim, the petitioner must show that he has "'been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Donovan v. City of Haverhill, 311 F.3d 74, 77 (1st Cir. 2002) (citation omitted). A "class of one" claim requires proof of "'an extremely high degree of similarity'" between the comparators. Snyder v. Gaudet, 756

10

F.3d 30, 34 (1st Cir. 2014) (citations omitted). Also, in general, a "class of one" petitioner must show that the differential treatment was motivated by "'bad faith or malicious intent to injure.'" Id. (citation omitted).

The petitioner contrasts his circumstances with a subset of non-U.S. citizen prisoners who have litigated cases in the District of New Hampshire. Included in that group are prisoners who were at FCI Berlin, who were then released to supervision, or placed in prerelease custody, in lieu of being transferred to FCI Allenwood Low for IHP proceedings.

Williams fails to compare his circumstance to any prisoners who are similarly situated to him in all relevant respects. Each of the prisoners he cites had already earned an amount of FSA time credits that equaled or exceeded the time remaining in their sentences, at the time of their placement in prerelease custody or release under the FSA. Williams alone among those he cites has not demonstrated his own eligibility to have his FSA time credits immediately applied to his sentence at the time he filed his § 2241 petition. Moreover, Williams has not compared himself to any prisoner already at FCI Allenwood Low or a similar facility with IHP capacity, who is the subject of an immigration detainer, but not in IHP proceedings; nor has he shown that the BOP would have considered any of the FCI Berlin prisoners he cites to have been appropriate candidates for a

11

transfer to FCI Allenwood Low, taking into account the factors the BOP must consider in exercising its authority to designate prisoners for particular institutions. See, e.g., 18 U.S.C. § 3621(b). And finally, Williams has offered no competent evidence of any prison official's bad faith or malicious intent, associated with his transfer and placement in the IHP.

In sum, Williams has failed to demonstrate any likelihood of success on the merits of the claims upon which he seeks preliminary injunctive relief. Accordingly, the district judge should deny his motion for a preliminary injunction.

## Conclusion

For the foregoing reasons, the district judge should deny the petitioner's motion for a preliminary injunction (Doc. No. 4). Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection(s) to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file specific written objections within the specified time

waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

*[signature: Andrea K. Johnstone]*
Andrea K. Johnstone
United States Magistrate Judge

August 7, 2024

cc:  Everett D. Williams, pro se