UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Everett Williams</u>

     v.                              Civil No. 23-cv-509-LM-AJ
                                        Opinion No. 2025 DNH 073 P
<u>Warden, FCI Berlin</u>

**O R D E R**

Petitioner Everett Williams, acting pro se, brings this proceeding under 28 U.S.C. § 2241 alleging that the Bureau of Prisons ("BOP") is unlawfully denying him placement in prerelease custody. Presently before the court are the petitioner's motion to amend and reconsider (doc. no. 19), the respondent's objection (doc. no. 22), and a Report and Recommendation ("R&R") recommending that the court deny Williams's motion.

This case has followed a tangled path on the court's docket. To start, the court has previously (in September 2024) granted summary judgment for respondent due to Williams's then-imminent transfer to pre-release custody. The court did so "without prejudice" to Williams's ability to obtain relief in the event he was not transferred to prerelease custody. Due to an apparent oversight, however, the court failed to enter judgment and close the case. Thus, the case has remained open. During this time, Williams's factual circumstances have changed—he was returned to federal prison—but his central legal claim remains the same. He has now filed a request for the court to reconsider the earlier grant of summary judgment and allow him to amend or supplement his original petition. Doc. no. 19.

In the R&R currently before the court, the Magistrate Judge (Johnstone, M.J.) recommends denying his requests on jurisdictional grounds because she concludes that doc. no. 19 constitutes a "new" habeas petition and that this court lacks jurisdiction over the person who would be the proper respondent to such a new petition. For the reasons explained herein, the court finds it still has jurisdiction, grants the motion to amend and reconsider (doc. no. 19), and declines to approve the R&R. A detailed summary of the facts follows.

## BACKGROUND

1.    The Original Petition

As of November 2023, Williams was incarcerated at the Federal Correctional Institution in Berlin, New Hampshire ("FCI Berlin"). On November 13, 2023, the court received a motion from Williams requesting that the court direct BOP to allow Williams, who is the subject of an immigration detainer, to transition to prerelease custody in light of time credits he had accrued under the First Step Act ("FSA"), 18 U.S.C. § 3624(g). Williams alleged in his petition that BOP has a policy to deny prerelease custody to persons who are the subject of immigration detainers, and that BOP's alleged policy violates the FSA and the Second Chance Act ("SCA"). See id. § 3632(d)(4)(C) (providing that BOP "shall" place inmates meeting statutory criteria in prerelease custody).

The court construed Williams's motion as a petition seeking relief under 28 U.S.C. § 2241. See United States v. Eisenberg, Crim. No. 16-cr-157-LM, 2020 WL 1308194, at *2 (D.N.H. Mar. 19, 2020) (explaining that "a request that [the movant]

be afforded a less restrictive form of custody . . . is a proper basis for a habeas petition under 28 U.S.C. § 2241"). His petition named BOP as the respondent. Doc. no. 1 at 1. The court (Johnstone, M.J.) conducted a preliminary review of Williams's petition pursuant to LR 4.3(d)(4)(A) and directed the Warden of FCI Berlin ("respondent") to file an answer or dispositive motion within sixty days of service of the petition upon the United States Attorney for the District of New Hampshire.[1]

On or about February 1, 2024, Williams was transferred to a Federal Correctional Institution in Allenwood, Pennsylvania ("FCI Allenwood-Low"), which is a low-security facility. FCI Allenwood-Low participates in the Institutional Hearing Program ("IHP"), which facilitates prisoners' participation in removal proceedings prior to their release from custody and, in many cases, enables immigration authorities to effect a prisoner's removal immediately upon the completion of the person's sentence.

---

[1] The undersigned construes the preliminary review order as effectively amending the petition to correct a misnomer by which Williams mistakenly labeled BOP as the respondent rather than the Warden of FCI Berlin. See Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004) ("[I]n habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."); see also Washington Tr. Advisors, Inc. v. Arnold, 669 F. Supp. 3d 35, 39-40 (D. Mass. 2023) (discussing misnomer). The Warden did not object to or seek reconsideration of the preliminary review order's determination that the Warden was to act as the respondent in this case. See Padilla, 542 U.S. at 452 (Kennedy, J., concurring) ("Because the immediate-custodian and territorial-jurisdiction rules are like personal-jurisdiction or venue rules, objections to the filing of petitions based on those grounds can be waived by the Government.").

2.    <u>Respondent's Motion for Summary Judgment</u>

Shortly after Williams's arrival at FCI Allenwood-Low, respondent moved for summary judgment. As grounds, respondent contended that Williams was statutorily ineligible for application of FSA time credits because his FSA time credits did not yet equal or exceed the number of days he had left to serve on his sentence. <u>See</u> 18 U.S.C. §§ 3632(d)(4)(C), 3624(g)(1)(A). Therefore, respondent contended, Williams was not yet eligible for placement in prerelease custody under the FSA. Respondent did not address Williams's claim that BOP had a policy to deny prerelease custody to persons with immigration detainers. Nor did respondent contend that Williams's transfer to a prison outside New Hampshire deprived this court of jurisdiction.

The court referred respondent's summary judgment motion to Magistrate Judge Johnstone for an R&R. In August 2024, Judge Johnstone directed respondent to update the record regarding Williams's eligibility to apply FSA time credits given the time that had passed since respondent filed his motion in February. Both Williams and respondent filed responses. Williams claimed that he had accrued additional time credits since February, but that BOP was intentionally stalling his placement in prerelease custody so that he could become subject to a final order of removal through IHP while incarcerated at FCI Allenwood-Low, which would render him statutorily ineligible for application of time credits. <u>See</u> 18 U.S.C. § 3632(d)(4)(E) (prisoners subject to final orders of removal ineligible for application of time credits). He further contended that it is BOP's "pattern and practice" to

work in tandem with immigration authorities "to ensure inmates are unable to have their accrued time credits applied."[2] Doc. no. 13 at 1.

In response to Judge Johnstone's order, respondent asserted that Williams would accrue sufficient FSA time credits to become eligible for prerelease custody on or about September 8, 2024, but that the exact location and date of his transfer to a halfway house was still pending. Respondent indicated that he did not anticipate Williams would become subject to a final order of removal prior to that date.

On August 22, 2024, Judge Johnstone issued an R&R recommending that the court grant respondent's motion for summary judgment because (1) there was no genuine dispute of material fact that Williams was ineligible for placement in prerelease custody before September 8, 2024, and (2) Williams's placement in prerelease custody on or about September 8 would render his petition moot. The R&R recommended that dismissal of Williams's petition be without prejudice, however, so that Williams could seek relief if he was not transitioned to prerelease custody on or about September 8.

### 3.   Emergency Addendum (Construed as New Petition and Dismissed)

On September 13, 2024, this court received from Williams an emergency addendum to his § 2241 petition. The addendum stated that BOP officials informed

---

[2] Around the same time, Williams filed a habeas petition in the Middle District of Pennsylvania, which is the district in which FCI Allenwood-Low is located. See Williams v. Warden, Allenwood-Low, Civ. No. 3:24-cv-1321, 2024 WL 4204277, at *1 (M.D. Pa. Sept. 16, 2024). Some of the claims in the Pennsylvania petition were similar to the claims Williams raised in his petition in this district. The Middle District of Pennsylvania ultimately denied relief. Id. at *5. That proceeding has no impact on the issues discussed in this order.

Williams on September 3 (which is also the date Williams signed the addendum) that Williams would not be placed in prerelease custody on September 8 and that no action would be taken to facilitate his release to a halfway house prior to an IHP hearing scheduled for September 16. Williams argued that intentionally delaying his placement in prerelease custody in order to cause him to become subject to a final order of removal constituted a "clear and deliberate" violation of the FSA. Doc. no. 14 at 1.

Judge Johnstone issued an endorsed order on September 13 directing respondent to submit a filing no later than September 17 addressing the status of the IHP proceeding and showing cause why the court should not order Williams's immediate placement in prerelease custody. See Endorsed Order of Sept. 13, 2024 (citing Woodley v. Warden, No. 24-3053-JWL, 2024 WL 2260904, at *3 (D. Kan. May 15, 2024) ("Numerous courts have held that the BOP has no discretion to delay or refuse transfer of an eligible prisoner to prerelease custody, which transfer is mandatory.")); see also, e.g., Komando v. Luna, Civ. No. 22-cv-425-SE, 2023 WL 310580, at *4-8 (D.N.H. Jan. 13, 2023), R&R approved, 2023 WL 1782034, at *1 (D.N.H. Feb. 6, 2023).

Respondent submitted a filing on September 17. Respondent stated that, in July 2024, the Warden of FCI Allenwood-Low sent a referral to BOP's Regional Reentry Manager's ("RRM") Office in Miami, Florida, seeking Williams's placement in prerelease custody on or about September 8, 2024. The RRM Office responded that it planned to delay Williams's placement in prerelease custody until resolution

of the IHP hearing on September 16 because Williams "would no longer be eligible to apply any FSA credits . . . if the hearing resulted in a final order of removal." Doc. no. 15 at 2. Williams appeared for the IHP hearing on September 16 but was not ordered removed from the country; instead, the hearing was continued to September 30, 2024. The Warden of FCI Allenwood-Low thereafter requested once more to the RRM Office "that [Williams] be placed in prerelease custody in the imminent future." Id. And, while the "date and time of [Williams's] transfer to prerelease custody ha[d] not been established" as of September 17, respondent "expected that [Williams's] transfer will occur in the imminent future." Id.

On September 20, 2024, Judge Johnstone directed the clerk's office to treat Williams's emergency addendum as a new and separate § 2241 petition because she found that the addendum challenged "a new decision of petitioner's current custodian, the FCI Allenwood Low Warden, to keep the petitioner incarcerated at FCI Allenwood Low past September 8, 2024." Endorsed Order of Sept. 20, 2024. In addition, Judge Johnstone directed the clerk's office to name the Warden of FCI Allenwood-Low as the respondent in the new case. Per Judge Johnstone's instructions, the clerk's office treated Williams's emergency addendum as a new § 2241 petition and opened a separate docket for it. See Williams v. FCI Allenwood Low, Warden, Civ. No. 24-cv-297-SM-AJ (D.N.H. Sept. 13, 2024) (doc. no. 1). Judge Johnstone thereafter conducted a preliminary review pursuant to Local Rule 4.3(d)(4) and issued an R&R recommending dismissal of Williams's filing because this court lacks jurisdiction over the Warden of FCI Allenwood-Low. Id. (doc. no. 2).

The court (McAuliffe, J.,) approved that R&R and directed the entry of judgment. Id. (doc. nos. 3, 4).

4.    Court Grants Motion for Summary Judgment

In the instant docket, the undersigned considered Williams's emergency addendum in reviewing the R&R recommending that the court grant respondent's motion for summary judgment. After consideration, the undersigned approved Judge Johnstone's R&R and granted respondent's motion for summary judgment without prejudice on September 23, 2024. However, the court's order failed to direct the clerk's office to enter judgment and close the case. Accordingly, despite granting the summary judgment motion, judgment was never entered in this case and Williams's petition was never dismissed.

5.    Williams Released to Halfway House in Miami But Quickly Returned to Prison

On September 25, 2024, respondent notified the court that Williams had been placed in prerelease custody, arriving at a halfway house in Miami, Florida on September 24, 2024. On January 30, 2025, however, BOP issued a memorandum cancelling placements in prerelease custody for persons with active detainers, including cases where no final order of removal had been issued. Doc. no. 22-3. Williams was arrested pursuant to this memorandum on February 11, 2025, and returned to prison at the Federal Detention Center in Miami, Florida ("FDC Miami").

On or about February 23, 2025, and while he was incarcerated at FDC Miami, Williams mailed to this court a pleading requesting that this court permit

him to amend his § 2241 petition and reconsider the denial of his original petition given his return to custody. Doc. no. 19. He seeks to supplement his original habeas petition with allegations that he has been returned to prison from the halfway house. Noting that the court had previously directed respondent to show cause why he should not be released to prerelease custody despite the existence of an immigration detainer, Williams argues that he continues to be eligible for prerelease custody under the FSA and that his detainer does not permit BOP to deny him the right to apply FSA time credits. Therefore, Williams argues, the court should reconsider its grant of summary judgment to respondent and award him a writ of habeas corpus directing his immediate return to prerelease custody.

On March 21, 2025, respondent objected. Doc. no. 22. Respondent contends that Williams's new filing is no different from the emergency addendum he filed in September 2024, and that it should be considered an altogether new § 2241 petition for the same reason that Judge Johnstone considered the emergency addendum to be a new petition insofar as both filings "challenge[ ] a new decision by a new set of actors," and not any decision by this respondent. Doc. no. 22 at 4-5. In other words, Williams's new filing does not challenge any action allegedly taken by the Warden of FCI Berlin in New Hampshire. And if Williams's new filing constitutes a new habeas petition, respondent argues that the proper respondent for the new petition would be the warden of the prison where he was incarcerated at the time he filed it: the Warden of FDC Miami. Because this court lacks jurisdiction over the Warden of

FDC Miami, respondent contends that the court should transfer doc. no. 19 to the Southern District of Florida pursuant to 28 U.S.C. § 1631.³

On April 3, 2025, Judge Johnstone issued an R&R recommending that the court deny doc. no. 19 for the reasons stated in respondent's objection. Judge Johnstone found that the arguments raised in doc. no. 19 "must be litigated in a new § 2241 petition, naming as the respondent [Williams's] current custodian, who is the warden of the facility where he is now located, not the FCI Berlin Warden." Endorsed Order of Apr. 3, 2025.

Doc. no. 19 and the R&R pertaining to it are currently before this court for review. On May 6, 2025, however, Williams submitted another motion seeking his immediate placement in prerelease custody. Doc. no. 23. While doc. no. 23 elaborates upon the position Williams takes in doc. no. 19, the relief it seeks and the legal theory upon which it relies are materially identical to the relief and argument set forth in doc. no. 19—namely, that Williams is entitled to placement in prerelease custody given his accumulated FSA time credits, but BOP is unlawfully refusing to place him in prerelease custody because of his immigration detainer. Williams thereafter submitted an addendum to doc. no. 23, which consists of a letter detailing his removal from the halfway house and return to prison. Doc. no. 25. By the time Williams submitted doc. nos. 23 and 25, he had been returned to FCI Allenwood-Low in Pennsylvania.

---

³ Respondent does not argue that Williams's petition should be denied on exhaustion grounds. Nor did respondent raise an exhaustion argument in its motion for summary judgment.

On May 13, 2025, Judge Johnstone issued a procedural order construing doc. nos. 23 and 25 as objections to the April 3, 2025, R&R recommending denial of doc. no. 19. Judge Johnstone also construed doc. no. 23 to be a new § 2241 petition, however, and directed the clerk's office to open a new docket, using doc. no. 23 as the initial § 2241 petition and doc. no. 25 as an addendum thereto. The order stated that Judge Johnstone planned to conduct a preliminary review of doc. no. 23 after the clerk's office opened the new case. That new case has been opened, but preliminary review is not yet complete. See Williams v. FCI Allenwood Low, Warden, No. 25-fp-180 (D.N.H. May 13, 2025).

## DISCUSSION

As noted, presently before the court are Williams's motion (doc. no. 19) seeking to amend his original habeas petition and for reconsideration of this court's grant of summary judgment to respondent, as well as the April 3, 2025 R&R recommending denial of that motion because the court lacks jurisdiction over the proper respondent to Williams's motion. Before explaining why doc. no. 19 does not constitute a new habeas petition but is instead an amendment to or supplement of Williams's original habeas petition, it is necessary to explore a rather complicated area of habeas jurisdictional jurisprudence.

A habeas petition brought under § 2241 "shall allege . . . the name of the person who has custody over" the petitioner. 28 U.S.C. § 2242; see also id. § 2243 ("The writ . . . shall be directed to the person having custody of the person detained."). In cases where a petitioner challenges the legality of his present

physical confinement within the United States—so-called "core challenges"—the Supreme Court has interpreted this statutory provision as requiring the petitioner to name his "immediate custodian" as the respondent. Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004). The "default rule" is that a petitioner's immediate custodian "is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Id. at 435; accord, e.g., Vasquez v. Reno, 233 F.3d 688, 691 (1st Cir. 2000) ("[W]e consider it settled . . . that when a prisoner petitions for a writ of habeas corpus under 28 U.S.C. § 2241, he must name as the respondent the superintendent of the facility in which he is being held.").

The immediate custodian rule flows not only from statutory interpretation, but also from the nature and legal effect of a writ of habeas corpus. A writ of habeas corpus "is directed to, and served upon, not the person confined, but his jailer. . . . The officer or person who serves it does not unbar the prison doors, and set the prisoner free, but the court relieves him by compelling the oppressor to release his constraint." Braden v. 30th Jud. Cir. Ct. of Ky., 410 U.S. 484, 495 (1973) (quoting In re Jackson, 15 Mich. 417, 439-40 (1867)). In other words, in a core challenge, a writ of habeas corpus terminates unlawful confinement — not by enjoining the person whose actions render the confinement unlawful (and thereby allowing continued confinement under lawful conditions) — but by directing the person responsible for confining the prisoner to free him. See Bridges v. Chambers, 425 F.3d 1048, 1049 (7th Cir. 2005) (Posner, J.) ("The assumption . . . behind [the immediate custodian] rule is that the relief sought in such an action—release from

custody—can be provided only by the custodian . . . ."). The prisoner's custodian is the proper respondent regardless of whether the prisoner's legal claims challenge any action taken by the custodian—beyond that of confining the prisoner. Given the nature of a habeas writ, an order to release a prisoner "is more logically directed to the person who [has] day-to-day control and actual physical custody [of the petitioner], namely, the warden," even if a supervisory official like the Attorney General would have "the ultimate authority to produce the body of the prisoner." Vasquez, 233 F.3d at 691, 696; see also 18 U.S.C. § 4001(b)(1) ("The control and management of Federal penal and correctional institutions . . . shall be vested in the Attorney General . . . .").

The immediate custodian rule is supplemented by 28 U.S.C. § 2241(a), which provides that district courts may grant writs of habeas corpus "within their respective jurisdictions." The Supreme Court has interpreted this statutory provision as requiring "nothing more than that the court issuing the writ have jurisdiction over the custodian." Padilla, 542 U.S. at 442 (quoting Braden, 410 U.S. at 495). This rule, often referred to as the "territorial jurisdiction" rule, is "not jurisdictional in the sense of a limitation on subject-matter jurisdiction." Id. at 451 (Kennedy, J., concurring).[4] While "[i]t is difficult to describe the precise nature of" the territorial jurisdiction rule, it is akin to a requirement that the court have

---

[4] Justice O'Connor joined Justice Kennedy in this concurrence. Because their votes were "necessary to the formation of a majority" in Padilla, Justice Kennedy's concurring opinion is "given particular weight." Ozturk v. Trump, --- F. Supp. 3d ----, 2025 WL 1009445, at *6 (D. Mass. Apr. 4, 2025) (quoting Schmitz v. Zilveti, 20 F.3d 1043, 1045 (9th Cir. 1994)).

personal jurisdiction over the person to whom the writ is directed—i.e., the prisoner's immediate custodian. Id. at 451, 453 (Kennedy, J., concurring); see also Vasquez, 233 F.3d at 690 ("[T]he court issuing the writ must have personal jurisdiction over the person who holds the petitioner in custody.").

When combined, the immediate custodian and territorial jurisdiction rules yield an additional requirement: the petitioner must "file the petition in the district of confinement." Padilla, 542 U.S. at 447. That is so because, in cases where the immediate custodian rule applies, "the district of confinement is synonymous with the district court that has territorial jurisdiction over the proper respondent"; "[b]y definition, the immediate custodian and the prisoner reside in the same district." Id. at 444 (emphasis omitted); accord id. at 451 (Kennedy, J., concurring) ("[W]hen an action is brought in the district court, it must be filed in the district court whose territorial jurisdiction includes the place where the custodian is located."). Thus, as a "general rule . . . for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." Id. at 443.

In this case, Williams filed his original § 2241 petition challenging the legality of his present physical confinement in federal prison. He filed his petition in this district at a time when he was confined in this district. And, while Williams did not name the Warden of the facility where he was incarcerated as the respondent, the court's preliminary review order recognized that the Warden of FCI Berlin was the appropriate respondent, that Williams intended to name the Warden as the

14

respondent, and corrected that misnomer by directing the Warden to act as respondent in this case (without objection from the Warden). Because Williams "name[d] his warden as respondent and file[d] the petition in the district of confinement," id. at 447, "[j]urisdiction attached on that initial filing for habeas relief," Griffin v. Ebbert, 751 F.3d 288, 290 (5th Cir. 2014).

However, while Williams properly invoked this court's habeas jurisdiction, he was subsequently transferred outside of this district in or around February 2024. That raises the question of whether this court continues to have authority to grant habeas relief, "since the petitioner's immediate custodian is now an out-of-district warden." Cummings v. Warden, FCI Berlin, Civ. No. 22-cv-468-SM-AJ, 2024 WL 1256068, at *3 (D.N.H. Mar. 25, 2024).

"Much federal case law has been devoted to the question of . . . whether a prisoner's post-filing transfer to another jurisdiction impacts the original court's ability to grant habeas relief." Fox v. Warden, FCI Berlin, Civ. No. 21-cv-158-SE, 2022 WL 1085311, at *1 (D.N.H. Apr. 11, 2022). While the First Circuit has not weighed in directly, every court of appeals to have considered the issue has held in some form that "the government's post-filing transfer of a § 2241 petitioner out of the court's territorial jurisdiction does not strip the court of jurisdiction over the petition." Anariba v. Dir. Hudson Cnty. Corr. Ctr., 17 F.4th 434, 446 (3d Cir. 2021); see also Ozturk v. Hyde, 136 F.4th 382, 392 (2d Cir. 2025); Lennear v. Wilson, 937 F.3d 257, 263 n.1 (4th Cir. 2019); Griffin, 751 F.3d at 290; White v. Lamanna, 42 F. App'x 670, 671 (6th Cir. 2002); In re Hall, 988 F.3d 376, 378-79 (7th Cir. 2021);

McCoy v. U.S. Bd. of Parole, 537 F.2d 962, 966 (8th Cir. 1976); Johnson v. Gill, 883 F.3d 756, 761 (9th Cir. 2018); Pinson v. Berkebile, 604 F. App'x 649, 652-53 (10th Cir. 2015); Chatman-Bey v. Thornburgh, 864 F.2d 804, 806 n.1 (D.C. Cir. 1988). The only circuits that have not yet so held are the First and Eleventh, though both have suggested that they would join the consensus. See Vasquez, 233 F.3d at 695 (opining, arguably in dicta, that the Supreme Court has "held that the government could not sidetrack a properly-filed habeas petition by changing the petitioner's place of detention after the court's jurisdiction had attached"); Goodman v. Keohane, 663 F.2d 1044, 1047 (11th Cir. 1981) ("[T]ransfers made in violation of [Federal Rule of Appellate Procedure 23(a), which prohibits the transfer of a prisoner pending appellate review of a decision in a habeas corpus proceeding] do not divest a court reviewing a habeas decision of its jurisdiction, regardless of the petitioner's absence from the territorial jurisdiction of the court.").

District courts within this circuit have taken divergent approaches. Some courts, including the undersigned, have held that a post-filing transfer out-of-district defeats jurisdiction when there is no one who would be an appropriate respondent remaining within the district. See Parker v. Hazelwood, Civ. No. 17-cv-484-LM, 2019 WL 4261832, at *3 (D.N.H. Sept. 9, 2019); Robinson v. Spaulding, Civ. No. 19-cv-11393-ADB, 2022 WL 2080142, at *3-4 (D. Mass. June 9, 2022); Lee v. Warden, FCI Berlin, Civ. No. 20-cv-148-PB, 2021 WL 3066280, at *1-4 (D.N.H. July 1, 2021), R&R approved, 2021 WL 3055027, at *1 (D.N.H. July 20, 2021); Bostic v. Spaulding, 483 F. Supp. 3d 19, 25-26 & n.2 (D. Mass. 2020); Mendez

v. Martin, No. 15-408ML, 2016 WL 2849598, at *4 (D.R.I. Apr. 19, 2016), R&R approved, 2016 WL 2732182, at *1 (D.R.I. May 10, 2016); Gonzalez v. Grondolsky, 152 F. Supp. 3d 39 44-45 (D. Mass. 2016); Aitcheson v. Holder, Civ. No. 15-11123-NMG, 2015 WL 10434871, at *2 (D. Mass. Dec. 31 2015), Johnson v. Immigr. & Customs Enf't, 960 F. Supp. 2d 347, 348-50 (D.P.R. 2013). Other district courts in this circuit have held to the contrary—that post-filing transfer out of the district is usually no obstacle to the issuance of a habeas remedy. See Fox, 2022 WL 1085311, at *3-4; Cummings, 2024 WL 1256068, at *4; Yancey v. Warden, FMC Devens, 682 F. Supp. 3d 97, 100 (D. Mass. 2023); Deras Lopez v. FCI Berlin, Warden, Civ. No. 23-cv-552-LM-TSM, 2024 WL 4217375, at *2-3 (D.N.H. July 30, 2024), R&R approved, 2024 WL 4216599, at *1 (D.N.H. Sept. 17, 2024). The basis for these diverging approaches primarily stems from competing interpretations of the Supreme Court's opinions in Ex parte Endo, 323 U.S. 283 (1944), and Padilla, 542 U.S. at 426.

In Endo, an American citizen of Japanese descent filed a petition for a writ of habeas corpus in the Northern District of California while she was imprisoned at an internment camp within that district. 323 U.S. at 284-85. The district court denied her petition, and while her appeal of that denial was pending before the Ninth Circuit, authorities transferred her to an internment camp in Utah. Id. at 285. The Supreme Court ultimately held that the district court in California retained authority to issue a writ of habeas corpus directing the termination of her confinement—but, in so holding, the court deployed ambiguous reasoning.

On the one hand, <u>Endo</u>'s holding can be read to rely on evidence in the record that there remained <u>some</u> custodian physically present within the Northern District, even if that person was not the petitioner's immediate custodian. The Court highlighted that it had been advised by the Acting Secretary of the Interior (who oversaw the internment regime, <u>id.</u> at 290 n.4) that, if the district court issued the writ to an "assistant director" of the War Relocation Authority "whose office is at San Francisco, which is in the jurisdiction of the District Court," that official would effectuate an order directing the petitioner's release. <u>Id.</u> at 304-05. In other words, the petitioner's transfer did not defeat jurisdiction because "a person in whose custody she is remains within the district." <u>Id.</u> at 306. On this reading of <u>Endo</u>, a district court will almost always lose jurisdiction following a post-filing transfer of the petitioner, because it is rare for there to be evidence in the record of the physical presence within the district of a BOP official who exercises supervisory authority over the petitioner's immediate custodian. <u>See, e.g.</u>, <u>Gonzalez</u>, 152 F. Supp. 3d at 45.

On the other hand, there is language in <u>Endo</u> indicating that the physical presence of a supervisory custodian is not what counts, but rather whether a supervisory custodian can be reached by service of process. In <u>Endo</u>, the Acting Secretary of the Interior advised not only that the petitioner would be released if the Northen District issued a writ to an official physically present within the District, but that "the court's order [would be] complied with in all respects" if the writ "is directed to the Secretary of the Interior or <u>any</u> official of the War Relocation

Authority." 323 U.S. at 304-05 (emphasis added). The category of officials to whom the writ could be directed "includ[ed]" the assistant director located in San Francisco, but, seemingly, also included supervisory officials who were not physically present in the Northern District, such as the Acting Secretary. Id. at 305 (emphasis added). In departure from language elsewhere in the opinion highlighting the physical presence of a supervisory custodian within the district, Endo also states that, following a petitioner's transfer out-of-district, the court retains jurisdiction "if there is a respondent within reach of its process who has custody of the petitioner." Id. at 306. Indeed, Endo's rhetoric is rather strong on this point:

> The statute upon which the jurisdiction of the District Court in habeas corpus proceedings rests gives it power to grant writs of habeas corpus for the purpose of an inquiry into the cause of restraint of liberty. That objective may be in no way impaired or defeated by the removal of the prisoner from the territorial jurisdiction of the District Court. That end may be served and the decree of the court made effective if a respondent who has custody of the prisoner is within reach of the court's process even though the prisoner has been removed from the district since the suit was begun.

Id. at 306-07 (citation, quotation, and footnote omitted; emphasis added). If one relies upon this language from Endo, a post-filing transfer will almost never defeat the district court's jurisdiction over a § 2241 petition filed by a person in federal custody, because the Attorney General—who is the ultimate custodian of federal prisoners—can still be reached by the district court's process. See, e.g., Fox, 2022 WL 1085311, at *4.

The Supreme Court's more recent foray into this area of the law is <u>Padilla</u>, but as with <u>Endo</u>, language in <u>Padilla</u> seems to cut in both directions. In <u>Padilla</u>, the petitioner was originally confined in New York pursuant to a material witness warrant issued in connection with a grand jury investigation into the September 11 terrorist attacks. 542 U.S. at 430-31. Shortly thereafter, the President ordered the Secretary of Defense to designate the petitioner as an "enemy combatant" and detain him in military custody. <u>Id.</u> at 431. The Secretary thereafter took custody of the petitioner and directed his transfer to a naval brig in South Carolina. <u>Id.</u> at 431-32. Two days after his arrival in South Carolina, the petitioner filed a § 2241 petition in the Southern District of New York, where he had previously been confined. <u>Id.</u> He named the President, the Secretary, and the Commander of the South Carolina naval brig as respondents. <u>Id.</u> at 432.

The Supreme Court concluded that the Southern District of New York lacked jurisdiction. Applying the immediate custodian rule, <u>Padilla</u> first explained that the brig Commander was the only proper respondent to the petition because she was "the equivalent of the warden at the military brig" and exercised day-to-day control over the petitioner's confinement. <u>Id.</u> at 436. The Secretary was not an appropriate respondent because, even if he exercised the "legal reality of control" over the petitioner's confinement (i.e., was his ultimate or supervisory custodian), he was not the petitioner's <u>immediate</u> custodian but rather a "remote supervisory official." <u>Id.</u> at 435, 439. And, under the territorial jurisdiction rule, the Southern District of New York lacked jurisdiction over the Commander of the South Carolina naval brig.

Id. at 442. Instead of filing in New York, the petitioner needed to "file the petition in the district of confinement." Id. at 447.

While Padilla did not involve a post-filing transfer, it nevertheless discussed Endo. Padilla distinguished Endo on the ground that, in Endo, the district court initially acquired jurisdiction when the petitioner filed in her district of confinement and named her immediate custodian as respondent. Id. at 440-41. By contrast, the petitioner in Padilla did not file in the proper district, and the Southern District of New York never acquired jurisdiction in the first instance. Id. at 441. According to Padilla, "Endo stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." Id.

Padilla's characterizations of Endo have fueled disagreement among district courts in this circuit. On the one hand, Padilla seems to state that Endo came out the way it did because the district court could direct the writ to "the assistant director of the [War Relocation Authority], who resided in the Northern District." Id. at 440. And elsewhere in the opinion, Padilla discounts the "service-of-process" theory of territorial jurisdiction, strongly implying that the custodian (and not merely the custodian's agent) must be capable of being served within the district. See id. at 444-46.

On the other hand, Padilla did not overrule Endo—and even approvingly quoted Endo's strong rhetoric regarding post-filing transfers: "Th[e] objective [of habeas relief] may be in no way impaired or defeated by the removal of the prisoner from the territorial jurisdiction of the District Court. That end may be served and the decree of the court made effective if a respondent who has custody of the [petitioner] is within reach of the court's process." Id. at 441 n.14 (alterations in Padilla) (quoting Endo, 323 U.S. at 307). Moreover, the court's rejection of the concept that a court's territorial jurisdiction is synonymous with the reach of its process was rendered in the context of explaining why the Southern District of New York never initially acquired jurisdiction over the petition. See id. at 444-46. In other words, when Padilla states that "the custodian's absence from the territorial jurisdiction of the district court is fatal to habeas jurisdiction," id. at 445, it is referring to the petitioner's immediate custodian, whom the petitioner must name as respondent in his initial petition in order for jurisdiction to attach in the first instance. See Dopp v. Pritzker, 38 F.3d 1239, 1245 (1st Cir. 1994) ("[T]he words contained in judicial opinions 'are to be read in light of the facts of the case under discussion.'" (quoting Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944))). The fact that the petitioner's immediate custodian must be physically present within the district at the time of filing does not necessarily mean that the supervisory custodian to whom the district court may direct a habeas writ post-transfer must also be physically located in the district. This explains Padilla's confirmation that Endo involved a circumstance in which the Court held "that the writ could be

directed to a supervisory official" because the district court initially acquired jurisdiction and the petitioner's "[g]overnment-procured absence" did not destroy that jurisdiction. Padilla, 542 U.S. at 441.

Padilla was a 5-4 case. As noted, supra n.4, Justice Kennedy issued a concurring opinion, in which Justice O'Connor joined. Much of the concurring opinion is devoted to pointing out circumstances in which the immediate custodian and territorial jurisdiction rules are "subject to exceptions," including "in the case[ ] of . . . removal of the prisoner from the territory of a district after a petition has been filed." Id. at 452-54 (Kennedy, J., concurring). Justice Stevens authored the dissent. Reading the majority and concurring opinions together, he observed that "[a]ll Members of this Court agree . . . that if jurisdiction was proper when the petition was filed, it cannot be defeated by a later transfer of the prisoner to another district." Id. at 458 (Stevens, J., dissenting). This characterization went unchallenged by the majority opinion, which, elsewhere, was rather vigorous in responding to the dissent's assertions. See id. at 447-50.

All told, this court concludes that, where a district court acquires initial jurisdiction over a § 2241 petition brought by a person in federal custody challenging his present physical confinement, the post-filing transfer of the petitioner out of the district does not destroy that jurisdiction so long as a person with the power to effectuate the petitioner's release may be reached by service of process.

This result accords with the prevailing consensus among the courts of appeals, as well as "broader jurisdictional principles." Khalil v. Joyce, --- F. Supp. 3d ----, 2025 WL 972959, at *22 (D.N.J. Apr. 1, 2025). "Diversity jurisdiction, for example, locks in at the time a case is filed—and survives changing circumstances down the line." Id.; see, e.g., Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991) (per curiam) (explaining that, so long as there was complete diversity at the time the case commenced, jurisdiction "is not divested by a subsequent change in the citizenship of the parties" (quoting Wichita R.R. & Light Co. v. Pub. Util. Comm'n of Kan., 260 U.S. 48, 54 (1922))); Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001) ("Courts determine whether a party has met the amount-in-controversy requirement by 'looking to the circumstances at the time the complaint is filed,'" and "events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." (brackets omitted) (first quoting Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995), and then St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289-90 (1938))). Similarly, "[i]n a federal-question case, the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction" over state law claims (though the court may, in its discretion, decline to exercise its jurisdiction over the remaining state law claims). Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996); see 28 U.S.C. § 1367(c)(3).

24

Not only does this conclusion accord with the weight of the appellate case law and broader jurisdictional principles, it harmonizes Padilla and Endo. While language in Padilla stressing the importance of the physical presence of a supervisory official within the district post-transfer could be read to abrogate Endo insofar as the latter held that amenability to process was what really mattered, Padilla did not involve the transfer of a petitioner out-of-district after a properly filed habeas petition. Endo did. "If a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions." Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (1989). Endo held that the district court in California retained jurisdiction notwithstanding the petitioner's transfer to Utah because the district could direct a writ of habeas corpus to any one of several supervisory custodians who had the power to comply with the writ—some of whom were within California, and some of whom were not. Endo, 323 U.S. at 304-05. Endo's holding has not been overruled, and this court's reading of the caselaw in this area respects its role as a lower court interpreting and applying Supreme Court precedent.

Finally, the court's interpretation squares with "the underlying equitable nature of the writ." Khalil, 2025 WL 972959, at *35. The Third Circuit has explained the equitable concerns that would arise from a narrower reading of Endo:

> "[T]he Government could willingly transfer [the petitioner]
> seeking habeas relief from continued detention to a

> jurisdiction that is more amenable to the Government's
> position, or the Government could transfer [the petitioner]
> for the purpose of intentionally introducing complicated
> jurisdictional defects to delay the merits review of already
> lengthy § 2241 claims. Taken to an extreme, the
> Government could transfer a petitioner with such
> consistency as to evade a district court ever even
> [exercising] jurisdiction over a petitioner's § 2241 claims.

Anariba, 17 F.4th at 447. To be sure, there is no evidence of that sort of

gamesmanship on the government's part in this case. But the fact remains that a

contrary interpretation of Endo could permit the government to evade judicial

review merely by "passing about . . . the body of a prisoner from one custodian to

another after a writ of habeas corpus has been applied [for]." Id. at 446 (quoting Ex

parte Catanzaro, 138 F.2d 100, 101 (3d Cir. 1943)). Given that a primary aim of the

immediate custodian and territorial jurisdiction rules as applied to the initial filing

of habeas petitions is to prevent forum shopping on the part of habeas petitioners,

see Padilla, 542 U.S. at 447, those same rules should not be read as giving the

government free license to forum shop by involuntarily transferring the petitioner

to far-flung locales.

In this case, the R&R recommends that the court deny Williams's motion to

amend (doc. no. 19) because it concludes that the court lacks jurisdiction over the

official who was Williams's immediate custodian at the time he filed his motion: the

Warden of FDC Miami. But any lack of jurisdiction over the FDC Miami Warden is

immaterial because Williams properly invoked this court's jurisdiction when he filed

his initial petition, and the court can make the habeas remedy effective by

delivering the writ to a supervisory official with custodial responsibility over Williams and within reach of this court's process: the Attorney General.

The only remaining wrinkle is the R&R's determination that the motion to amend is, in reality, a new habeas petition. If the motion to amend is a new habeas petition, Williams arguably needed to comply with the immediate custodian and territorial jurisdiction rules anew by filing the motion in the district where he was confined at the time of filing and naming as respondent the Warden of FDC Miami.

As a general matter, petitions brought under § 2241 "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242; see also Fed. R. Civ. P. 81(a)(4) (providing that the Federal Rules of Civil Procedure generally apply to habeas proceedings unless a contrary rule is specified in a federal statute or the rules governing proceedings under §§ 2254 or 2255). "The Civil Rule governing pleading amendments, Federal Rule of Civil Procedure 15, made applicable to habeas proceedings by § 2242, . . . allows pleading amendments with 'leave of court' at any time during a proceeding." Mayle v. Felix, 545 U.S. 644, 655 (2005) (quoting Fed. R. Civ. P. 15(a)(2)). Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). This standard may apply even when, as here, leave to amend is sought after the issuance of an order dismissing the pleading sought to be amended—so long as judgment has not yet entered.[5] Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006); see also

---

[5] Where judgment has entered, however, "a district court should not allow an amended pleading . . . unless that judgment is first set aside or vacated." Maldonado

27

Torres-Álamo v. Puerto Rico, 502 F.3d 20, 25 (1st Cir. 2007) ("When, as here, a

motion to amend is entered before formal entry of judgment, the district court

should evaluate the motion under the liberal standard of [Rule] 15(a)." (quotation

omitted)).

A party may seek leave to amend or supplement a pleading in order to

"amplify a previously alleged claim or defense." 6 Mary Kay Kane & Howard M.

Erichson, Federal Practice & Procedure § 1474 (3d ed.). In his original petition,

Williams claimed that he was entitled to apply his FSA time credits and obtain

placement in prerelease custody but BOP would not allow him to do so because of

an immigration detainer, which, Williams claims, is unlawful. In his motion to

amend, he seeks to supplement his claim with information that BOP has done the

very thing he warned they would: deny him prerelease custody on the basis of his

immigration detainer. More than simply deny him prerelease custody, they have

revoked his prerelease custody and returned him to prison on the basis of his

detainer. In these circumstances, the court concludes that Williams's motion to

amend (doc. no. 19) is not a new habeas petition, but a request to amend or

supplement his initial petition, over which this court continues to have jurisdiction.

_____

v. Dominguez, 137 F.3d 1, 11 (1st Cir. 1998). But "a judgment is effective"—and
therefore subject to motions to vacate under Rules 59 or 60—"only when set forth on
a separate document and entered" on the docket as such. Fed. R. Civ. P. 58 advisory
committee's note to 2002 amendment. Here, as noted, judgment never entered
following the court's grant of summary judgment. The liberal standard of Rule 15(a)
therefore governs Williams's motion to amend.

Cf. Anariba, 17 F.4th at 442 (holding that a Rule 60 motion does not constitute a
new § 2241 petition so long as it does not raise a new claim for relief).

Finally, the court grants doc. no. 19 to the extent it seeks reconsideration of
this court's order granting respondent's motion for summary judgment. Where
judgment has not yet entered on an order granting a motion for summary judgment,
LR 7.2(d) governs motions for reconsideration. Bradley v. Wells Fargo Bank, N.A.,
Civ. No. 12-cv-127-PB, 2014 WL 2106495, at *1 (D.N.H. May 20, 2014).
Reconsideration of a court order may be warranted when factual circumstances
meaningfully change following issuance of the order in a manner that "compels a
different result." Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs, 552 F. Supp. 2d
137, 144-145 & n.5 (D.N.H. 2008). The court previously granted respondent's
summary judgment motion without prejudice because Williams's then-imminent
transfer to prerelease custody would moot his habeas petition. See doc. no. 12 at 7;
doc. no. 16. Given developments since the time of that order—namely, BOP's
promulgation of a memorandum deeming persons with detainers ineligible for
prerelease custody and Williams's return to federal prison pursuant to that
memorandum—reconsideration is warranted.

## CONCLUSION

For these reasons, the court declines to approve the R&R dated April 3, 2025,
grants Williams's motion to amend (doc. no. 19), and vacates its grant of
respondent's summary judgment motion (doc. no. 6). In light of this order, the court
also vacates the procedural order dated May 13, 2025 (pertaining to doc. nos. 23 and

25) and directs the clerk's office to close the docket opened pursuant to that procedural order. The court orders respondent to show cause within fourteen days of this order's issuance why the court should not grant the habeas petition and order the Attorney General to release Williams from his present physical confinement and return him to prerelease custody. Finally, because Williams has shown a strong likelihood of success on his petition and his claim is legally intricate, the court determines that the interests of justice require the appointment of counsel. See 18 U.S.C. § 3006A(a)(2)(B); United States v. Mala, 7 F.3d 1058, 1063-64 (1st Cir. 1993); see also, e.g., Harriot v. Jamison, No. 24 Civ. 208 (AT) (JLC), 2025 WL 384556, at *6 (S.D.N.Y. Feb. 4, 2025) ("Since the FSA's enactment, courts have rejected the view that BOP may rely solely on an immigration detainer to deny application of credits earned under the statute."); Komando, 2023 WL 310580, at *6 (collecting cases). Counsel for Williams shall be appointed forthwith.

   SO ORDERED.

             _____
             Landya McCafferty
             United States District Judge

June 12, 2025

cc:  Everett Willaims, prose
  Counsel of Record