UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Everett Williams

    v.                                  Civil No. 23-cv-509-LM-AJ
                                        Opinion No. 2025 DNH 086 P

Warden, FCI Berlin

**O R D E R**

Petitioner Everett Williams brings this proceeding under 28 U.S.C. § 2241 alleging that the Bureau of Prisons ("BOP") is unlawfully denying him placement in prerelease custody. The court previously issued an order which, among other things, directed respondent to show cause as to why the court should not grant Williams's petition and order his immediate placement in prerelease custody. See Williams v. Warden, FCI Berlin, --- F. Supp. 3d ----, Civ. No. 23-cv-509-LM-AJ, 2025 WL 1666745, at *12 (D.N.H. June 12, 2025). Respondent filed a response to that show-cause order, doc. no. 28, and Williams replied to that response, doc. no. 30. For the following reasons, the court grants Williams's § 2241 petition and orders his immediate placement in prerelease custody.

## BACKGROUND

This case has a complicated procedural history, which is fully set forth in the court's show-cause order. See Williams, 2025 WL 1666745, at *1-5. The court will summarize here only those portions that are material for purposes of the present order.

In November 2023, Williams filed the instant § 2241 petition requesting that the court direct BOP to allow Williams, who is the subject of an immigration detainer, to transition to prerelease custody in light of time credits he had accrued under the First Step Act ("FSA"), 18 U.S.C. § 3624(g). Proceeding pro se, Williams alleged that BOP has a policy to deny prerelease custody to persons who are the subject of immigration detainers, and that BOP's alleged policy violates the FSA. In September 2024, the court granted summary judgment to respondent on mootness grounds because respondent represented to the court that Williams would be imminently placed in prerelease custody.

BOP placed Williams in a halfway house in Miami, Florida on or about September 24, 2024. However, in January 2025, BOP issued a memorandum cancelling placements in prerelease custody for all persons with active detainers like Williams. See doc. no. 22-3. Williams was arrested pursuant to that memorandum on February 11, 2025, and returned to prison at the Federal Detention Center in Miami, Florida ("FDC Miami").

In April, BOP issued a second memorandum confirming that "BOP has determined to redesignate all non-U.S. citizen inmates with immigration detainers" presently in prerelease custody "back to secure institutions." Doc. no. 28-1 at 2. The memorandum further states that, for inmates who are subject to immigration detainers, BOP will only apply up to 365 days of FSA time credits toward early

placement in supervised release. Id. at 3. "Remaining FSA Time Credits, if any, will not be used for transfer to prerelease custody."[1] Id.

On February 23, 2025, while incarcerated at FDC Miami, Williams mailed a pleading to this court requesting permission to amend his § 2241 petition and reconsideration of the denial of his petition. He sought to supplement his original habeas petition with allegations that he had been returned to prison from the halfway house, and he sought reconsideration of the grant of summary judgment on the same basis. Williams continued to argue that his immigration detainer does not permit BOP to deny him application of FSA time credits, that he is entitled to placement in prerelease custody under the FSA, and that this court should consequently direct his immediate return to prerelease custody.

On June 12, 2025, this court issued the aforementioned show-cause order granting Williams's motion to amend. In addition, because the prior grant of summary judgment was without prejudice based upon Williams's imminent placement in prerelease custody, the court vacated its grant of summary judgment. The court also appointed counsel for Williams and directed respondent to show cause as to why the court should not grant Williams's § 2241 petition and order his immediate return to prerelease custody.

---

[1] The memorandum identifies "limited exceptions" to this rule, such as when the prisoner's sentence does not include a term of supervised release, or when placement in prerelease custody is mandated by court order. Doc. no. 28-1 at 3.

**DISCUSSION**

The court must now consider Williams's claim in his § 2241 petition that he is entitled to placement in prerelease custody under the FSA and that his immigration detainer does not permit BOP to deny him application of FSA time credits. The court first explains the relevant statutory scheme set forth in the FSA and why that scheme requires that Williams be placed in prerelease custody. The court then addresses respondent's counterarguments.

I.   Relevant Statutory Scheme Under the FSA

Congress enacted the FSA in 2018 "with the purpose of modifying prior sentencing law and expanding vocational training, early-release programs, and other initiatives designed to reduce recidivism." Yufenyuy v. Warden, FCI Berlin, 659 F. Supp. 3d 213, 216 (D.N.H. 2023) (quoting United States v. Venable, 943 F.3d 187, 188 (4th Cir. 2019)). Among other things, the FSA "established a system of time credits and provided eligible inmates the opportunity to earn those credits for participating in evidence-based recidivism reduction programming and productive activities." Adepoju v. Scales, --- F. Supp. 3d ----, Civ. No. 3:25cv245, 2025 WL 1392287, at *8 (E.D. Va. May 14, 2025) (quoting Valladares v. Ray, 130 F.4th 74, 79 (4th Cir. 2025)). The time-credit system available under the FSA "operates separately from other pre-existing 'credit' systems, including the credits prisoners earn for good behavior during incarceration." Komando v. Luna, Civ. No. 22-cv-425-SE, 2023 WL 310580, at *3 (D.N.H. Jan. 13, 2023), R&R approved, 2023 WL

1782034, at *1 (D.N.H. Feb. 6, 2023); see 18 U.S.C. § 3624(b) (providing for good conduct credits).

The FSA sets forth requirements for earning time credits. Under the FSA, "[a] prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities" unless the prisoner is serving a sentence for a disqualifying conviction set forth in the statute. 18 U.S.C. § 3632(d)(4)(A), (D). A prisoner may also receive an additional five days of time credits for every thirty days of successful participation in such programming or activities if they have been "determined by the Bureau of Prisons to be at a minimum or low risk for recidivating" and they maintain that low risk of recidivism over the course of two consecutive assessments. Id. § 3632(d)(4)(A)(ii). However, a prisoner may not receive time credits for participating in programming that the prisoner completed "prior to the date of enactment of this subchapter" or "during official detention prior to the date that the prisoner's sentence commences under section 3585(a)." Id. § 3632(d)(4)(B).

The FSA also sets forth requirements for the application of time credits once they have been received. See Gonzalez-Garcia v. FCI Berlin, Warden, Civ. No. 23-cv-0091-SM, 2023 WL 3020872, at *2 (D.N.H. Apr. 20, 2023) ("[C]ertain inmates are not eligible to receive FSA time credits. Other inmates are not eligible to apply FSA time credits . . . ." (citation and emphases omitted)). In order to be eligible to apply earned time credits, the prisoner's time credits must be "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment" as "computed

under applicable law," and the prisoner must have "shown through [BOP's] periodic risk assessments a demonstrated recidivism risk reduction" or that he has "maintained a minimum or low recidivism risk." 18 U.S.C. § 3624(g)(1)(A)-(C).

As relevant to this case, a noncitizen "is ineligible to apply time credits . . . if [he] is the subject of a final order of removal under any provision of the immigration laws . . . of the Immigration and Nationality Act." Id. § 3632(d)(4)(E)(i). An order of removal is what it sounds like: a decision from an immigration judge to remove a noncitizen after finding that the noncitizen "is inadmissible or deportable and that the [noncitizen] is not entitled to [protection from removal or] any of the relief or protection that he requested" in removal proceedings. Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1229a(c)(5)). In contrast to a final order of removal, an immigration detainer "is a request from ICE to another law enforcement agency to detain a non-citizen up to 48 hours so that ICE may investigate whether the non-citizen is subject to deportation." Morales v. Chadbourne, 793 F.3d 208, 212 (1st Cir. 2015). Nothing in the FSA states that an immigration detainer renders a noncitizen ineligible to apply time credits. Komando, 2023 WL 310580, at *5-6.

Assuming a prisoner meets statutory criteria for the application of time credits, the FSA provides that "[t]ime credits . . . shall be applied toward time in prerelease custody or supervised release," and that "the Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C). While there are

minor differences between eligibility to apply time credits toward placement in prerelease custody versus early transfer to supervised release, see id. § 3624(g)(1)(D), on balance the FSA "preserves the BOP's discretion to determine how to allocate earned time credits between supervised release and prerelease custody, and whether to allocate the credits entirely to advance the term of supervised release, to advance the placement in prerelease custody, or both," Komando, 2023 WL 310580, at *7.

If time credits are applied toward early transfer to supervised release, such transfer may not occur more than twelve months prior to completion of the prisoner's sentence, and no more time credits than are necessary to achieve a twelve-month-early transfer can be applied toward supervised release. Id. § 3624(g)(3). In other words, no more than 365 days of FSA time credits can be applied toward early transfer to supervised release. If that maximum is reached, BOP is required to apply the remaining time credits toward placement in prerelease custody (assuming all other statutory criteria for placement in prerelease custody are satisfied). See Wesa v. Engleman, No. 2:25-cv-03413-WLH-DTB, 2025 WL 1675536, at *3 (C.D. Cal. May 23, 2025) ("Section 3624(d)(4)(C) states that earned time credits 'shall be applied,' [which] mean[s] that BOP lacks any discretion to exclude an eligible prisoner from having his earned time credits applied under the Act . . . ."); Woodley v. Warden, USP Leavenworth, No. 24-3053-JWL, 2024 WL 2260904, at *3 (D. Kan. May 15, 2024) ("Numerous courts have held that BOP has

7

no discretion to delay or refuse transfer of an eligible prisoner to prerelease custody, which transfer is mandatory.").

In this case, Williams's projected release date via good conduct time under 18 U.S.C. § 3624(b) is April 15, 2027. See doc. no. 6-2 at 2. As of September 2024, he had accrued 950 days of FSA time credits.[2] Doc. no. 11-2 at 1. There are fewer than 950 days between today's date and April 15, 2027. Thus, Williams has accrued time credits "in an amount that is equal to [or greater than] the remainder of [his] imposed term of imprisonment" as "computed under applicable law." 18 U.S.C. § 3624(g)(1)(A), (C). In addition, there is no dispute that Williams "has shown through [BOP's] periodic risk assessments [either] a demonstrated recidivism risk reduction" or a consistently maintained "minimum or low recidivism risk." Id. § 3624(g)(1)(B). Nor is there any dispute that he meets the specified criteria for application of time credits toward placement in prerelease custody or early placement in supervised release, as set forth in §§ 3624(g)(1)(D)(i) and (ii), respectively. Finally, although it is undisputed that Williams is the subject of an immigration detainer, there is no evidence he is subject to a final order of removal and therefore ineligible to apply time credits under § 3632(d)(4)(E)(i). Because it is beyond dispute that Williams meets the statutory criteria for application of time

---

[2] It is unclear whether Williams has accrued additional FSA time credits since his return to prison in February. Whether he has accrued additional credits is immaterial, however, because the amount of time credits he had accrued as of September 2024 entitles him to application of time credits.

8

credits, those time credits "shall be applied," and BOP "shall transfer [him] into prerelease custody or supervised release." Id. § 3632(d)(4)(C).

BOP has elected to apply 365 days of Williams's time credits toward early transfer to supervised release, which bumps up his projected release date to April 15, 2026. Doc. no. 6-2 at 2-3. Following the application of these time credits toward transfer to supervised release, Williams has at least 585 days of time credits remaining. Doc. no. 11-2 at 1. Because Williams will have time credits remaining after their application toward early placement in supervised release, BOP must apply those remaining time credits toward placement in prerelease custody.

BOP, however, has refused to do so. Its refusal defies the consensus among district courts that "BOP may [not] rely solely on immigration detainer to deny application of credits earned under the statute." Harriot v. Jamison, No. 24 Civ. 208 (AT) (JLC), 2025 WL 384556, at *6 (S.D.N.Y. Feb. 4, 2025); see, e.g., Komando, 2023 WL 310580, at *3-8. The courts so holding reason that the FSA sets forth specific criteria for earning and applying time credits, and that, because the FSA does not provide that persons with immigration detainers are ineligible to apply time credits, BOP may not rely upon a detainer alone to deny application of time credits. See, e.g., Komando, 2023 WL 310580, at *3-8. Following a review of the statutory scheme set forth in the FSA, the court finds the reasoning of these courts persuasive and adopts it.

Respondent nevertheless asserts that Williams is not entitled to relief. As grounds, respondent contends that: (1) the FSA permits BOP to apply some but not

9

all of Williams's time credits; (2) Williams's February 2025 motion to amend his original habeas petition constitutes a new habeas petition over which this court lacks jurisdiction; (3) Williams concedes that he has failed to exhaust his claim; and (4) a request for an order directing BOP to place a federal prisoner in prerelease custody is not cognizable in a habeas petition. These arguments are not persuasive.

II.   The FSA Does Not Permit BOP to Refuse to Apply Time Credits on the Basis of an Immigration Detainer

Respondent argues that Williams's case is distinguishable from those cases in which courts have ordered BOP to apply time credits for prisoners with immigration detainers because the BOP policy addressed in those cases precluded any application of time credits, whereas the instant memoranda provide that BOP will apply time credits toward supervised release but not prerelease custody. Boiled down to its essence, respondent's argument is that the FSA permits BOP to enact sub-regulatory guidance that categorically denies placement in prerelease custody on the basis of an ineligibility criterion—an immigration detainer—that does not appear in the FSA. Respondent is incorrect.

Courts that have considered the legality of BOP's new policy to deny placement in prerelease custody for persons with active detainers have held that the policy violates the FSA. See Mohammed v. Engleman, No. 2:25-cv-01011-MWC-MBK, 2025 WL 1909836, at *11-13 (C.D. Cal. July 9, 2025) (report and recommendation); Adepoju, 2025 WL 1392287, at *9-10; Wesa, 2025 WL 1675536, at *4; Kuzmenko v. Phillips, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *5 (E.D.

10

Cal. Mar. 10, 2025). These courts have noted that the April memorandum "effectively establishes a 365-day cap on [time credits] that can be applied for prisoners with immigration detainers." Mohammed, 2025 WL 1909836, at *13. The FSA, however, only sets forth a 365-day cap on time credits that can be applied toward supervised release; it imposes no cap on the further application of time credits toward other forms of relief from that point. Id. The memorandum effectively takes the 365-day cap on time credits toward supervised release and stretches it to a 365-day cap on the application of time credits altogether. "But the statute includes no express cap for prisoners with immigration detainers—or any other group." Id.

In addition to imposing a 365-day cap on the application of time credits absent from the FSA, the April memorandum all but eliminates the possibility of placement in prerelease custody for prisoners subject to immigration detainers. But given the mandatory language of the FSA—which states that time credits "shall be applied" if the prisoner meets statutory eligibility criteria—the argument that BOP may categorically refuse to transfer eligible prisoners to prerelease custody is "untenable." Adepoju, 2025 WL 1392287, at *9; see also Wesa, 2025 WL 1675536, at *4 ("[T]he statutory language of Section 3632 reflects no restriction on the application of FSA Credits for persons with immigration detainers."); Kuzmenko, 2025 WL 779743, at *5 ("BOP does not have the discretion to exclude an eligible prisoner from having his earned time credits applied under the FSA, because the . . . language in 18 U.S.C. § 3632(d)(4)(C) is mandatory.").

For these reasons, the memoranda to which respondent points fail to meaningfully distinguish Williams's case from Komando or other, similar cases. BOP lacks authority to deny application of time credits based on criteria that do not appear in the FSA. Because the memoranda purport to cap the application of Williams's time credits and deny him the ability to apply time credits toward placement in prerelease custody on the basis of an ineligibility criterion that does not appear in the FSA, the memoranda violate the FSA.

III.   Williams's February 2025 Filing Is Not a New Habeas Petition

As to respondent's second argument, the court has already explained in its prior order why Williams's motion to amend does not constitute a new habeas petition and why this court continues to have jurisdiction over Williams's claim. See Williams, 2025 WL 1666745, at *5-12. The court will not repeat that analysis here. For present purposes, it suffices to reiterate that, in his motion to amend, Williams sought leave to supplement his habeas petition with allegations that BOP has done the very thing he warned they would do in his original petition: deny him application of time credits on the basis of his immigration detainer in violation of the FSA. Contrary to respondent's assertion, Williams's petition as supplemented by his February 2025 filing does not rely upon facts and circumstances that materially differ from those which animated his original filing. And even if

12

judgment had entered prior to Williams's February 2025 filing,[3] the court would have construed the reconsideration request in Williams's February 2025 filing as a request to vacate judgment under Rule 60(b)(2) or (6), granted that request, and thereafter allowed amendment. See Fed. R. Civ. P. 60(b)(2), (6) (final judgment may be vacated due to "newly discovered evidence that" could not previously have been discovered "with reasonable diligence," or for "any other reason that justifies relief"); see also 6 Mary Kay Kane & Howard Erichson, Federal Practice & Procedure § 1489 (3d ed.) (explaining that, once judgment is set aside under Rule 60(b), "the question [of] whether an amendment then should be allowed is governed by Rule 15(a)"); Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 75 (1st Cir. 2014) (court liberally construes pro se filings).

IV.   Williams's Exhaustion Discussion Is Not a Concession That His February 2025 Filing Is a New Petition, and Any Failure to Exhaust Is Excused

Respondent next argues that, because Williams acknowledges in his February 2025 filing that he did not exhaust administrative remedies before filing his motion, he has therefore conceded that his motion to amend constitutes a new habeas petition. The court disagrees. Williams was proceeding pro se at the time of his February 2025 filing. The court must construe pro se filings liberally. See Foley, 772 F.3d at 75. While Williams's February 2025 filing discusses exhaustion, the

---

[3] Although the court noted in its prior order that judgment was never entered on a docket entry separate from the summary judgment order, Federal Rule of Civil Procedure 58(c)(2) provides that judgment is entered "when the judgment is entered in the civil docket under Rule 79(a)" and it is either "set out in a separate document" or "150 days have run from the entry in the civil docket," whichever is earlier.

court does not presume that this discussion in a prisoner's pro se filing constitutes a concession that Williams's motion to amend is a new habeas petition containing claims that he needed to exhaust prior to filing.

Importantly, the court does not understand respondent to argue that any failure to exhaust bars this court's consideration of the allegations in Williams's February 2025 filing. And, as noted in the court's show-cause order, respondent did not raise exhaustion in its summary judgment motion or at any point prior to the response to the show-cause order. See Williams, 2025 WL 1666745, at *4 n.3. However, to the extent respondent now intends to argue that Williams's habeas petition should be denied on exhaustion grounds, the court disagrees.

"There is no statutory requirement that a federal prisoner exhaust administrative remedies prior to seeking habeas relief under 28 U.S.C. § 2241." Lettieri v Unit Team Manager English, Civ. No. 25-cv-10859-LTS, 2025 WL 1342766, at *1 (D. Mass. May 8, 2025), appeal filed, No. 25-1504 (1st Cir. May 27, 2025). Nevertheless, the availability of an administrative remedy "sometimes provid[es] a 'prudential reason' not to permit a detainee to seek habeas relief." Cockerham v. Boncher, 125 F.4th 11, 16 (1st Cir. 2024) (brackets omitted) (quoting Boumediene v. Bush, 553 U.S. 723, 793 (2008)). Because this prudential exhaustion principle "arises under common law, not a mandate of Congress, 'federal courts have some leeway' to relax [it].'" Carroll v. Warden of FCI Berlin Robert Hazlewood, Civ. No. 21-cv-139-PB, 2021 WL 2877463, at *2 (D.N.H. May 26, 2021) (quoting Anversa v. Partners Healthcare Sys., Inc., 835 F.3d 167, 175 (1st Cir. 2016)), R&R

14

approved, 2021 WL 2857184, at *1 (D.N.H. July 7, 2021). Exhaustion is not required, for example, "with regard to claims which turn only on statutory construction." Coleman v. U.S. Parole Comm'n, 644 F. App'x 159, 162 (3d Cir. 2016). Nor is exhaustion required when exhaustion would be futile, as when BOP "has indicated predetermination of the issue." Wright v. United States, No. C19-5254-RBL-TLF, 2019 WL 2746630, at *7 (W.D. Wash. June 5, 2019), R&R approved, 2019 WL 2743636, at *1 (W.D. Wash. July 1, 2019). A failure to exhaust may also be excused when exhaustion would cause the petitioner irreparable harm, such as by requiring him to be incarcerated beyond the date he would otherwise be entitled to release under the FSA. Nelson v. Cox, No. 4:20-CV-04199-KES, 2021 WL 1221178, at *1-2 (D.S.D. Apr. 1, 2021).

    All three of these exceptions to the exhaustion requirement apply in this case. First, Williams's claim turns on a pure question of statutory interpretation: does the FSA grant BOP discretion to deny application of time credits on the basis of an immigration detainer? Second, BOP has issued two memoranda indicating an official agency determination to decline to apply time credits toward placement in prerelease custody for persons with immigration detainers, such that it would be futile for Williams to pursue administrative relief within BOP. Finally, requiring Williams to exhaust his claims would necessarily entail that he remains incarcerated while pursuing administrative relief, despite clear evidence that he has already passed the date by which he should have been released from incarceration and transferred to prerelease custody. For these reasons, even if

15

respondent intended to argue that a failure to exhaust bars the relief Williams seeks, the court would reject such an argument.

V.     Williams's Claim Is Cognizable in a § 2241 Petition

Finally, the court is unpersuaded by respondent's contention that the relief Williams seeks—placement in prerelease custody—is not cognizable in a habeas petition. While respondent cites cases from other jurisdictions which have held that such relief may not be afforded in a § 2241 proceeding, see, e.g., Wilborn v. Mansukhani, 795 F. App'x 157, 164 (4th Cir. 2019) (recognizing that this "cognizability question is open to some debate among the circuit courts"), the law in the First Circuit is that claims like Williams's may be brought in a § 2241 petition. See Francis v. Maloney, 798 F.3d 33, 36 (1st Cir. 2015) ("[A]n individual may invoke § 2241 . . . to challenge placement (or lack thereof) in a community confinement center . . . ."); see also, e.g., United States v. Eisenberg, Crim. No. 16-cr-00157-LM, 2020 WL 1308194, at *2 (D.N.H. Mar. 19, 2020) ("[A] request that [the petitioner] be afforded a less restrictive form of custody . . . is a proper basis for a habeas petition under 28 U.S.C. § 2241 . . . ."); Moe v. Trump, Civ. No. 25-10195-GAO, 2025 WL 438730, at *1 (D. Mass. Feb. 7, 2025) ("The law of this Circuit establishes that claims challenging the 'manner of execution of a sentence are properly brought under 28 U.S.C. § 2241.'" (brackets omitted) (quoting Muniz v. Sabol, 517 F.3d 29, 33-34 (1st Cir. 2008))).

## CONCLUSION

Williams's petition (doc. no. 1) is granted. Respondent is hereby ORDERED to immediately apply all time credits toward Williams's placement in prerelease custody that remain after application of time credits toward early placement in supervised release. Respondent shall file a status report within seven days of this order's issuance informing the court as to whether Williams has been returned to prerelease custody.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 4, 2025

cc: Counsel of Record